# Blanchard *versus* Tioga Improvement Company.

1. An owner who in 1852 paid the road taxes returned for collection for the years 1850 and 1851, is not liable to have his unseated lands sold for additional taxes assessed during these years, but not returned until 1856. *Per Supreme Court.*

2. The authority to lay an assessment "not exceeding one cent on the dollar upon real and personal estate, offices, trades and occupations," for road purposes, and also, "the levy of an assessment and collection of the same," for the purpose of discharging any just debt due a former supervisor or overseer of the poor, is vested directly in the supervisors, without application to the court. *Per* WHITE, *Pres. Com. Pleas, approved by Supreme Court.*

ERROR to the Court of Common Please of *Tioga County.*

Case stated as follows:—

"In 1850 and 1851, the township of Covington levied a road tax on unseated land in said township, and caused it to be returned to the commissioners and treasurer for collection, and it was collected and receipted to the owners in 1852. In 1856 said township caused to be returned for 1850 and 1851 an additional road tax for collection. Is such a tax returned four years after the sales year for the collection of the same legal, and can it be enforced against the lands in the hands of a *bona fide* purchaser without notice; these lands having been sold in 1853 by the heirs of Coleman and Ellis to the Tioga Improvement Company without notice of said taxes being due, &c.?

"In 1856 said township also caused to be returned to the commissioners' and treasurer's office for collection as aforesaid, road taxes for 1852, 1853, 1854, and 1855, of one cent on the dollar, and for 1855 two additional road taxes of one cent on the dollar each; and also an additional road tax for each of the years 1852, 1853 and 1854 of one cent on the dollar each. Can townships levy a tax, to be collected in cash, without the order of court, and can they levy such tax over one cent on the dollar in any one year with the order of said court? If the court are of opinion that the taxes for 1850 and 1851 are legal and can be collected out of the land, then judgment for the plaintiff for the amount of taxes for those years. If the court are of the contrary opinion, then judgment to be entered for the defendant for the taxes for 1850, 1851, 1852 and 1853, and

additional for the last three years. If the court are of the opinion that a cash tax for road purposes can be levied without the order of court of one cent on the dollar, then judgment to be entered for plaintiff for the taxes for 1854 and 1855. And if the court are of the opinion that with an order of court the townships may levy two or more taxes in the same year to be collected in cash of one cent on the dollar each, then judgment to be entered for plaintiff for all the taxes returned for 1854 and 1855. But if the court are of the opinion that only one cent on the dollar can be levied in any one year with an order of court, then judgment to be entered as aforesaid for the tax first levied in 1854 and 1855. On the whole, judgment to be entered by the court according to the law of the case under the various different points presented."

Upon which case the court, WHITE, J., rendered the following judgment:—

"The first question in this case is ruled by the decision of the Supreme Court, in *Robinson* v. *Williams*, 6 Watts, 281. Four years' taxes, from 1805 to 1809, had been assessed on a tract of unseated land in Northumberland County, and remained unpaid. In 1809 the owner sold it. The purchaser subsequently made valuable improvements and paid the taxes on it as seated property. When Union County was formed this tract was set off into it, and in 1816 (three years after the tract had been set off to Union), was sold by the treasurer of Northumberland County for the taxes assessed upon it when unseated, without notice to the vendee of the original owner, who continued to reside on the land, and improve and pay taxes on it till 1831, when ejectment was brought by the purchaser at treasurer's sale, and it was held that he was entitled to recover.

"There is no limitation in the act of 1811 (referred to by defendant's counsel), as to the time when a transcript of road taxes on unseated land must be returned, and which if not complied with avoids taxes. The provisions of the law are directory and not in the nature of a statute of limitation. The taxes on the Coleman and Ellis lands were assessed in 1850 and 1851, and returned for collection in 1856. They are not barred by the general act of limitations if that has any application to an assessment for taxes.

"On the 3d of April, 1851, the several special acts regulating roads and the assessment and collection of road taxes then in force in the county of Tioga were repealed, and the general road laws of the commonwealth adopted. These authorize the levy of an assessment 'not exceeding one cent on the dollar upon real and personal estate, offices, trades and occupations, for the purpose of laying out, opening, making, amending or repairing of roads and highways, making and repairing bridges,

[Blanchard *v.* Tioga Improvement Company.]

and for such other purposes as may be authorized by law.' And also, 'the levy of an assessment and collection of the same, for the purpose of discharging any just debt due a former supervisor or overseer of the poor.' See 25th section of the act of 15th April, 1834, and 7th section of the act of 28th February, 1835. The amount of the last mentioned assessment is not fixed or limited, but there is no doubt that the act authorizes a levy of at least one cent on the dollar for the purposes stated, and requires its collection in money. The authority to lay both these taxes is vested directly in the supervisors, without application to the court.

"On the 3d of May, 1852, an act was passed giving power to the court on the application of any creditor of a township, to order the supervisors to levy a tax not exceeding one per cent. on the last adjusted valuation for road purposes, to be collected in the same manner that county rates and levies are collected, and to be paid out on debts of said township in the manner specified in said act.

"It is very evident, therefore, that the officers of the township of Covington had legal authority to assess two taxes of one cent on the dollar of the adjusted valuation for the years 1852, 1853, 1854 and 1855, without leave of the court, and that the third tax of one cent on the dollar, assessed in 1855, is also regular and collectable, having been ordered by the court under the provisions of the act of 3d of May, 1852.

"Judgment is therefore entered in favor of plaintiff for the taxes of 1850 and 1851, and for the taxes of 1852, 1853, 1854 and 1855, and the additional taxes for these years levied by the supervisors without order from the court, and also for the additional tax of 1855, levied in pursuance of the order of the court. Amount to be ascertained by counsel and judgment to to be made up by prothonotary."

To which defendants excepted, and assigned the following errors:—

"1st. The court erred in entering judgment for the plaintiff for the additional taxes for 1850 and 1851, which were not returned to the commissioners' office in 1852, when the grantors of the plaintiffs in error paid their taxes for the two preceding years, and in fact until three years after the land had been sold to a bona fide purchaser without notice.

"2d. The court erred in entering judgment for the plaintiff for the road tax and additional tax for the years 1852 and 1853, for the reasons that they were not returned to the county commissioners in 1854, when the same parties paid those taxes for the two preceding years.

"3d. The court erred in entering judgment for the plaintiff

on the whole case, as it should have been entered for the defendant generally."

*T. Allen,* for plaintiff in error.

*J. W. Guernsey,* for defendant in error.

The opinion of the court was delivered June 23d, 1857, by

Woodward, J.—The case stated may be reduced to two questions—the first whereof relates to the taxes of 1850–51. Were these recoverable?

It is part of the case that road taxes for the years were assessed upon the lands in question by the supervisors of Covington township—were returned to the commissioners and treasurer of the county, and were collected and receipted for to the owners in 1852. The taxes now sought to be recovered are additional road taxes returned in 1856, but when assessed we are not informed. It is necessary to presume, however, that they were assessed in these years respectively, for there is no authority in our statutes for the supervisors of 1856 to levy a tax for 1850 and 1851. The office of supervisor is annual only, and, if increased taxation becomes necessary, power is given him by the acts of assembly to levy it as of the year he is in office, but he has no power to apportion it among the years that are gone, when others administered the office.

The question then is, whether an owner who, in 1852, paid the road taxes returned for collection for the years 1850 and 1851, is liable to have his unseated land sold for additional taxes assessed during these years, but not returned until 1856.

We are clearly of the opinion that he is not.

The payment was a final settlement with Covington township. The demands of the government were satisfied, and road taxes for these two years could return no more to plague the owners of these lands. If all that had been assessed were not returned, this was the fault of the supervisors—if all that had been returned was not received, this was the fault of the treasurer. But the negligences of public officers are not to be charged against owners who do their whole duty when they present themselves at the proper time and place to pay all that is required. *Baird* v. *Calhoun,* 5 W. & S. 540.

The learned judge thought that *Robinson* v. *Williams,* 6 W. 281, ruled the question as to these taxes, but we do not so understand that case.

The taxes there were duly assessed and returned, and not paid; and the point ruled was that the treasurer might sell seven years afterwards, though the land, meantime, had become

[Titus *v.* Wilmarth.]

seated and been set off into another county. The acts of assembly having imposed no limitation on the powers of the treasurer to sell, this court would impose none. Such was the doctrine of that case ; but what renders it inapplicable here is the fact that here the taxes had been paid. The treasurer could not sell these lands for the taxes of 1850 and 1851, not because of any statute of limitation, but because the lands had been discharged by settlement with the owners. On this ground we think the court erred as to the taxes of 1850 and 1851, and that they should not have been included in the judgment on the case stated.

But as to the taxes of the subsequent years, we see no ground for reversing the judgment of the court below.

Inconveniences do doubtless result to purchasers of unseated lands from ignorance of township assessments, but if they are properly made, parties may have access to them, for the act of assembly requires supervisors and overseers of the poor to enter them in books prepared for the purpose, to be open to the inspection of all concerned, without fee or reward, and after they are certified to the commissioners, the treasurer is required to keep an open record of them. If more be required by way of protection from secret liens, it must be looked for from the legislature. Directing $114 60, the aggregate of the taxes of 1850 and 1851, to be deducted from the amount of the judgment, the same is affirmed for the balance thereof.

Judgment affirmed.